Bruce Fein (D.C. Bar No: 446615)
W. Bruce DelValle (D.C. Bar No: 1520906)
Fein & DelValle PLLC
300 New Jersey Avenue N.W., Suite 900
Washington, D.C. 20001
Telephone: (202) 465-8727
Facsimile: (202) 347-0130
*bruce@feinpoints.com*
*brucedelvalle@gmail.com*
Attorneys for Plaintiff.

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **KHALED SAFFURI**, an individual person, | |
| Plaintiff, | Civil Action No: **19-cv-3005** |
| v. | Honorable Judge: _____ |
| **AL ARABIYA**, a broadcast television station owned by the Kingdom of Saudi Arabia; **AL ARABIYA AL HADATH**, a broadcast television station owned by the Kingdom of Saudi Arabia; **SAUDI 24 TV**, a broadcast television station owned by the Kingdom of Saudi Arabia; and **OTHMAN OMAR**, an individual person, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendants. | |

**COMES NOW** Plaintiff, Khaled Saffuri, through his undersigned attorneys, and files this Complaint for defamation against Defendants, Al Arabiya, Al Arabiya Al Hadath  and Saudi 24 TV, as *alter egos* of the Kingdom of Saudi Arabia, and, Othman Omar, an individual, and states as follows:

### VENUE AND JURISDICTION

1.      Venue is proper under 28 U.S.C. §1391(b) (2) and (3) because a substantial portion of the activities which gave rise to Plaintiff's claims occurred in this District or this District otherwise has personal jurisdiction over Defendants.

2.      This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §1330 and 1332 (a) (2).  Al Arabiya and Al Arabiya Al Hadath are *alter egos* of the Kingdom of Saudi Arabia. Plaintiff's claims arise from the commercial satellite and electronic internet broadcasting activities of Defendants Al Arabiya, Al Arabiya Al Hadath and Saudi 24 TV inside or outside the territory of the Unites States that inflicted injury to Plaintiff in the United States within the meaning of 28 §U.S.C. 1605 (a) (2). Othman Omar is a citizen of the Kingdom of Dubai. Plaintiff is a citizen of Virginia. The amount in controversy exceeds $75,000.

3.      This Court possesses personal jurisdiction over Defendants Al Arabiya and Al Arabiya Al Hadath under 28 U.S.C. §1330 (b).  This Court possesses personal jurisdiction over Othman Omar under the District of Columbia long-arm statute, 13-424 (a) (4) by causing tortious injury or engaging in a persistent course of conduct in the District of Columbia.

## PARTIES

4.      Plaintiff Khaled Saffuri is a human rights advocate and close personal friend of the late journalist Jamal Khashoggi, assassinated by the Kingdom of Saudi Arabia according to the United States intelligence community. Mr. Saffuri resides in Virginia and is *sui generis.*

5.      Defendants Al Arabiya, Al Arabiya Al Hadath and Saudi 24 TV are each broadcast and electronic *alter egos* of the Kingdom of Saudi Arabia and controlled by the Saudi Ministry of Communications. They operate free-to-air commercial television news channels similar to CNN, Fox News Channel, or MSNBC.

6.      Al Arabiya, Al Arabiya Al Hadath and Saudi 24 TV each operate a studio in Washington, D.C. At least one of Al Arabiya's or Al Arabiya Al Hadath's reporters is a member of the White House press pool.

7.      Al Arabiya's, Al Arabiya Al Hadath's and Saudi 24 TV's broadcasts and electronic transmissions are transmitted, received and circulated in the United States and throughout the world via satellite transmission, terrestrial broadcast signal, the internet or otherwise.

8.      Defendant Othman Omar is a resident of Emirate of Dubai in The United Arab Emirates.

9.      Defendant Othman Omar is employed by or appears on Al Arabiya, Al Arabiya Al Hadath and Saudi 24 TV as an on-air journalist and was the lead reporter in the broadcasts at issue in this case.

## FACTUAL BACKGROUND

### A.      First Defamatory Broadcast

10.      A few days after noted journalist Jamal Khashoggi entered the Saudi Arabian Consulate in Istanbul, Turkey to be brutally tortured and assassinated by the Kingdom of Saudi Arabia on October 2, 2019, and one (1) day before he was declared missing on October 9, 2018, Defendants maliciously, knowingly, or recklessly broadcast false and defamatory statements  about Plaintiff on or about October 8, 2018 ("Defamatory Broadcast No. 1")

11.      Defendants' first malicious and knowingly false statement published in Defamatory Broadcast No. 1 asserted as fact that Plaintiff was "the person who feeds Western media, especially the Washington Post, with false information and fake news relating to the disappearance of Saudi journalist Jamal Khashoggi in Turkey", specifically the allegedly false statement that Saudi Arabia was responsible for Mr. Khashoggi's disappearance.

12.      Defendants' second malicious and knowingly false statement published in Defamatory Broadcast No. 1 asserted as fact the defamatory *per se* untruth that Plaintiff "in 2001, his [Plaintiff's]  relations with Hamas, [listed by the United States as a foreign terrorist organization] grew stronger and he  began receiving financial funds [from the terrorist group]counting in the

tens of millions of dollars to support the Muslim Brotherhood in the U.S. and to "buy" media voices and writers to influence American society [and] to depict Saudi Arabia as a state sponsor of terrorism and a dictatorship"

13.     Defendants' third malicious and knowingly false statement published in Defamatory Broadcast No. 1 asserted as fact the defamatory *per se* untruth that Plaintiff is a

> "terrorist and Muslim Brotherhood's Member [who] became the source for foreign newspapers, top of the list is the Washington Post. Thus he [Mr. Saffuri] circulated Qatari-sponsored Muslim Brotherhood's lies and fabrications to implicate Saudi Arabia in Jamal Khashoggi's disappearance. But it didn't last long, as facts about Khashoggi's disappearance began to emerge and it transpired that the Muslim Brotherhood in the U.S.A. [through Mr. Saffuri] wrote this strange story about Khashoggi's disappearance, while the Muslim Brotherhood in Turkey executed his [Khashoggi's] kidnapping".

### B.     Second Defamatory Broadcast

14.     Later, also on or about October 8, 2019, Defendants' again maliciously, knowingly, or recklessly broadcast a false and defamatory report about Plaintiff. ("Defamatory Broadcast No. 2").

15.     Defendants' malicious and knowingly false  published  the false statement in Defamatory Broadcast No. 2 asserted "Qatar Loyalist personalities from the Muslim Brotherhood's network and supporting organizations, for example, Khaled Saffuri, who some Americans warns of using him as a news source, considered him as the biggest distributor of falsified information in the Khashoggi case."

### C.     Third Defamatory Broadcast

16.     Subsequently, on or about October 8, 2019, Defendants further maliciously, knowingly, or recklessly broadcast false and defamatory statements about Plaintiff. ("Defamatory Broadcast No. 3").

17.     The initial malicious and knowingly false statement published in Defamatory Broadcast No. 3 asserted that Plaintiff Saffuri was the source of the claim that "President Donald Trumps' critique of the media encouraged Saudi Arabia's killing of journalist Jamal Khashoggi."

18.     The second malicious and knowingly false statement published in Defamatory Broadcast No. 3 was that Plaintiff "Khaled Saffuri has strong ties with extremist organizations and with Al-Qaeda supporter Abdelrahman al-Amoudi who is currently in American custody and is also implicated in the plot to kill the late King Abdullah bin Abdelaziz when the later was a Crown Prince" of the Kingdom of Saudi Arabia.

19.     The third malicious and knowingly false statement published in Defamatory Broadcast No. 3 was that Plaintiff was "the only source feeding news reports on the Khashoggi's case" and that Saffuri was "linked to the plot to kill late King Abdullah bin Abdelaziz", then the ruler of the House of Saud and the King of the Kingdom of Saudi Arabia, the owners of Defendants Al Arabiya, Al Arabiya Al Hadath  and Saudi 24 TV.

20.     All of these published statements concerning Mr. Saffuri are categorically untrue.

21.     Facts known and/or readily available to Defendants suggest the unreliability of Defendants' source(s) for the defamatory allegations concerning Plaintiff Saffuri.

22.     Defendants  have acted with either actual knowledge of falsity or with negligent or reckless or willful disregard for the truth or falsity of the defamatory statements.

23.     All conditions precedent to this action have occurred or been performed.

## COUNT I - Defamation

24.     Plaintiff  repeats and re-alleges paragraphs 1-23, above, as if fully set forth herein.

25.     Defendants' Defamatory Broadcast No. 1 maliciously, intentionally, knowingly, and recklessly published a false statement about  Plaintiff by asserting that Plaintiff was "the person

who feeds Western media, especially the Washington Post, with false information and fake news relating to the disappearance of Saudi journalist Jamal Khashoggi in Turkey."

26.      Defendants' false and defamatory statement that Plaintiff was "the person who feeds Western media, especially the Washington Post, with false information and fake news relating to the disappearance of Saudi journalist Jamal Khashoggi in Turkey" was published with ill-will and spite towards Plaintiff.

27.      Defendants' false and defamatory statement that Plaintiff was "the person who feeds Western media, especially the Washington Post, with false information and fake news relating to the disappearance of Saudi journalist Jamal Khashoggi in Turkey" was published without privilege to its worldwide audience, e.g., a third party.

28.      Defendants' false and defamatory statement that Plaintiff was "the person who feeds Western media, especially the Washington Post, with false information and fake news relating to the disappearance of Saudi journalist Jamal Khashoggi in Turkey" is actionable as a matter of law irrespective of special harm or whether its publication caused Plaintiff special harm.

29.      Defendants' false and defamatory statement that Plaintiff was "the person who feeds Western media, especially the Washington Post, with false information and fake news relating to the disappearance of Saudi journalist Jamal Khashoggi in Turkey" damaged Plaintiff in his business, profession,  and personally as a human rights advocate or otherwise.

30.      As a direct and proximate result of the false and defamatory statements concerning Plaintiff published or caused to be published by Defendants, Mr. Saffuri has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, a human rights  and international  justice  advocate,  and  as  a  businessman,  and  has  lost  or  will  lose  business

opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

31.      Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false and defamatory statement that Plaintiff was "the person who feeds Western media, especially the Washington Post, with false information and fake news relating to the disappearance of Saudi journalist Jamal Khashoggi in Turkey" with the specific intent to cause harm to Mr. Saffuri and in order to boost their own reputations and that of the Kingdom of Saudi Arabia and to conceal, deny and obfuscate the fact that Saudi Arabia was responsible for Mr. Khashoggi's disappearance, torture and death, as well as boost Defendants' ratings, popularity and viewership, , and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

### COUNT II - Defamation *Per Se*

32.      Plaintiff  repeats and re-alleges paragraphs 1-23, above, as if fully set forth herein.

33.      Defendants' Defamatory Broadcast No. 1 maliciously, intentionally, knowingly and recklessly published a false statement about  Plaintiff by asserting that "in 2001, his [Plaintiff's] relations with Hamas, [listed by the United States as a foreign terrorist organization] grew stronger and he  began receiving financial funds [from the terrorist group]counting in the  tens of millions of dollars to support the Muslim Brotherhood in the U.S. and to "buy" media voices and writers to influence American society [and] to depict Saudi Arabia as a state sponsor of terrorism and a dictatorship."

34.      Defendants' false and defamatory statement that "in 2001, his [Plaintiff's] relations with Hamas, grew stronger and he  began receiving financial funds counting in the  tens of millions of

dollars to support the Muslim Brotherhood in the U.S. and to "buy" media voices and writers to influence American society [and] to depict Saudi Arabia as a state sponsor of terrorism and a dictatorship" was published with ill-will and spite towards Plaintiff.

35.    Defendants' false and defamatory statement that "in 2001, his [Plaintiff's] relations with Hamas, grew stronger and he began receiving financial funds counting in the tens of millions of dollars to support the Muslim Brotherhood in the U.S. and to "buy" media voices and writers to influence American society [and] to depict Saudi Arabia as a state sponsor of terrorism and a dictatorship" was published without privilege to their audience, e.g., a third party.

36.    Defendants' false and defamatory statement that "in 2001, his [Plaintiff's] relations with Hamas, grew stronger and he began receiving financial funds counting in the tens of millions of dollars to support the Muslim Brotherhood in the U.S. and to "buy" media voices and writers to influence American society [and] to depict Saudi Arabia as a state sponsor of terrorism and a dictatorship" is actionable as a matter of law irrespective of special harm or whether its publication caused Plaintiff special harm.

37.    Defendants' false and defamatory statement that "in 2001, his [Plaintiff's] relations with Hamas, grew stronger and he began receiving financial funds counting in the tens of millions of dollars to support the Muslim Brotherhood in the U.S. and to "buy" media voices and writers to influence American society [and] to depict Saudi Arabia as a state sponsor of terrorism and a dictatorship" is defamatory *per se*.

38.    Defendants' false and defamatory statement that "in 2001, his [Plaintiff's] relations with Hamas, grew stronger and he began receiving financial funds counting in the tens of millions of dollars to support the Muslim Brotherhood in the U.S. and to "buy" media voices and writers to influence American society [and] to depict Saudi Arabia as a state sponsor of terrorism and a

dictatorship" damaged Plaintiff in his business, profession, and personally as a human rights advocate or otherwise.

39.     As a direct and proximate result of the false and defamatory statements concerning Plaintiff published or caused to be published by Defendants, Mr. Saffuri has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, a human rights and international justice advocate, and as a businessman, and has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

40.     Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false and defamatory statement that "in 2001, his [Plaintiff's] relations with Hamas, grew stronger and he began receiving financial funds counting in the tens of millions of dollars to support the Muslim Brotherhood in the U.S. and to "buy" media voices and writers to influence American society [and] to depict Saudi Arabia as a state sponsor of terrorism and a dictatorship" with the specific intent to cause harm to Mr. Saffuri and in order to boost their own reputations and that of the Kingdom of Saudi Arabia and to conceal, deny and obfuscate the fact that Saudi Arabia was responsible for Mr. Khashoggi's disappearance, torture and death, as well as boost Defendants' ratings, popularity and viewership, , and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

### COUNT III – Defamation *Per Se*

41.     Plaintiff repeats and re-alleges paragraphs 1-23, above, as if fully set forth herein.

42.     Defendants' Defamatory Statement No. 1 maliciously, intentionally, knowingly and recklessly published a false statement about Plaintiff that Plaintiff, is a "terrorist and Muslim

Brotherhood's Member [who] became the source for foreign newspapers, top of the list is the Washington Post. Thus he [Mr. Saffuri] circulated Qatari-sponsored Muslim Brotherhood's lies and fabrications to implicate Saudi Arabia in Jamal Khashoggi's disappearance. But it didn't last long, as facts about Khashoggi's disappearance began to emerge and it transpired that the Muslim Brotherhood in the U.S.A. [through Mr. Saffuri] wrote this strange story about Khashoggi's disappearance, while the Muslim Brotherhood in Turkey executed his [Khashoggi's] kidnapping".

43.     Defendants' false and defamatory statement that Plaintiff Saffuri is a "terrorist and Muslim Brotherhood's Member [who] became the source for foreign newspapers, top of the list is the Washington Post. Thus he [Mr. Saffuri] circulated Qatari-sponsored Muslim Brotherhood's lies and fabrications to implicate Saudi Arabia in Jamal Khashoggi's disappearance. But it didn't last long, as facts about Khashoggi's disappearance began to emerge and it transpired that the Muslim Brotherhood in the U.S.A. [through Mr. Saffuri] wrote this strange story about Khashoggi's disappearance, while the Muslim Brotherhood in Turkey executed his [Khashoggi's] kidnapping" was published with ill-will and spite towards Plaintiff.

44.     Defendants' false and defamatory statement that  Plaintiff Saffuri is a "terrorist and Muslim Brotherhood's Member [who] became the source for foreign newspapers, top of the list is the Washington Post. Thus he [Mr. Saffuri] circulated Qatari-sponsored Muslim Brotherhood's lies and fabrications to implicate Saudi Arabia in Jamal Khashoggi's disappearance. But it didn't last long, as facts about Khashoggi's disappearance began to emerge and it transpired that the Muslim Brotherhood in the U.S.A. [through Mr. Saffuri] wrote this strange story about Khashoggi's disappearance, while the Muslim Brotherhood in Turkey executed his [Khashoggi's] kidnapping" was published without privilege to their audience, e.g., a third party.

45.     Defendants' false and defamatory statement that Plaintiff Saffuri is a "terrorist and Muslim Brotherhood's Member [who] became the source for foreign newspapers, top of the list is the Washington Post. Thus he [Mr. Saffuri] circulated Qatari-sponsored Muslim Brotherhood's lies and fabrications to implicate Saudi Arabia in Jamal Khashoggi's disappearance. But it didn't last long, as facts about Khashoggi's disappearance began to emerge and it transpired that the Muslim Brotherhood in the U.S.A. [through Mr. Saffuri] wrote this strange story about Khashoggi's disappearance, while the Muslim Brotherhood in Turkey executed his [Khashoggi's] kidnapping" is actionable as a matter of law irrespective of special harm or whether its publication caused Plaintiff special harm.

46.     Defendants' false and defamatory statement that Plaintiff Saffuri is a "terrorist and Muslim Brotherhood's Member [who] became the source for foreign newspapers, top of the list is the Washington Post. Thus he [Mr. Saffuri] circulated Qatari-sponsored Muslim Brotherhood's lies and fabrications to implicate Saudi Arabia in Jamal Khashoggi's disappearance. But it didn't last long, as facts about Khashoggi's disappearance began to emerge and it transpired that the Muslim Brotherhood in the U.S.A. [through Mr. Saffuri] wrote this strange story about Khashoggi's disappearance, while the Muslim Brotherhood in Turkey executed his [Khashoggi's] kidnapping" is defamatory *per se*.

47.     Defendants' false and defamatory statement that Plaintiff Saffuri is a "terrorist and Muslim Brotherhood's Member [who] became the source for foreign newspapers, top of the list is the Washington Post. Thus he [Mr. Saffuri] circulated Qatari-sponsored Muslim Brotherhood's lies and fabrications to implicate Saudi Arabia in Jamal Khashoggi's disappearance. But it didn't last long, as facts about Khashoggi's disappearance began to emerge and it transpired that the Muslim Brotherhood in the U.S.A. [through Mr. Saffuri] wrote this strange story about Khashoggi's

disappearance, while the Muslim Brotherhood in Turkey executed his [Khashoggi's] kidnapping" damaged Plaintiff in his business, profession, and personally as a human rights advocate or otherwise.

48.    As a direct and proximate result of the false and defamatory statements concerning Plaintiff published or caused to be published by Defendants , Mr. Saffuri has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, a human rights  and international justice advocate, and as a businessman, and has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

49.    Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false and defamatory storyline and speciously false denial  that Plaintiff Saffuri is a  "terrorist and Muslim Brotherhood's Member [who] became the source for foreign newspapers, top of the list is the Washington Post. Thus he [Mr. Saffuri] circulated Qatari-sponsored Muslim Brotherhood's lies and fabrications to implicate Saudi Arabia in Jamal Khashoggi's disappearance. But it didn't last long, as facts about Khashoggi's disappearance began to emerge and it transpired that the Muslim Brotherhood in the U.S.A. [through Mr. Saffuri] wrote this strange story about Khashoggi's disappearance, while the Muslim Brotherhood in Turkey executed his [Khashoggi's] kidnapping" with the specific intent to cause harm to Mr. Saffuri and in order to boost their own reputations and that of the Kingdom of Saudi Arabia and to conceal, deny and obfuscate the fact that Saudi Arabia was responsible for Mr. Khashoggi's disappearance, torture and death, as well as boost Defendants' ratings, popularity and viewership, and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care

which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

## COUNT IV - Defamation

50.     Plaintiff repeats and re-alleges paragraphs 1-23, above, as if fully set forth herein.

51.     Defendants' Defamatory Broadcast No. 2 maliciously, intentionally, knowingly, or recklessly published a false statement about Plaintiff that "Qatar Loyalist, personalities from the Muslim Brotherhood's network and supporting organizations, for example, Khaled Saffuri, who some Americans warns of using him as a news source, considered him as the biggest distributor of falsified information in the Khashoggi case."

52.     Defendants' false and defamatory statement about Plaintiff that "Qatar Loyalist, personalities from the Muslim Brotherhood's network and supporting organizations, for example, Khaled Saffuri, who some Americans warns of using him as a news source, considered him as the biggest distributor of falsified information in the Khashoggi case" was published with ill-will and spite towards Plaintiff.

53.     Defendants' false and defamatory statement about Plaintiff that "Qatar Loyalist, personalities from the Muslim Brotherhood's network and supporting organizations, for example, Khaled Saffuri, who some Americans warns of using him as a news source, considered him as the biggest distributor of falsified information in the Khashoggi case" was published without privilege to their audience, e.g., a third party.

54.     Defendants' false and defamatory statement about Plaintiff that "Qatar Loyalist, personalities from the Muslim Brotherhood's network and supporting organizations, for example, Khaled Saffuri, who some Americans warns of using him as a news source, considered him as the

biggest distributor of falsified information in the Khashoggi case" is actionable as a matter of law irrespective of special harm or its publication caused Plaintiff special harm.

55.     Defendants' false and defamatory statement about Plaintiff that "Qatar Loyalist, personalities from the Muslim Brotherhood's network and supporting organizations, for example, Khaled Saffuri, who some Americans warns of using him as a news source, considered him as the biggest distributor of falsified information in the Khashoggi case" damaged Plaintiff in his business, profession,  and personally as a human rights advocate or otherwise.

56.     As a direct and proximate result of the false and defamatory statements concerning Plaintiff published or caused to be published by Defendants, Mr. Saffuri has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, a human rights  and international justice advocate, and as a businessman, and has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

57.     Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false and defamatory storyline and speciously false statements about Plaintiff that "Qatar Loyalist, personalities from the Muslim Brotherhood's network and supporting organizations, for example, Khaled Saffuri, who some Americans warns of using him as a news source, considered him as the biggest distributor of falsified information in the Khashoggi case"  with the specific intent to cause harm to Mr. Saffuri and in order to boost their own reputations and that of the Kingdom of Saudi Arabia and to conceal, deny and obfuscate the fact that Saudi Arabia was responsible for Mr. Khashoggi's disappearance, torture and death, as well as boost Defendants' ratings, popularity and viewership, and showing willful misconduct,

malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

## COUNT V - Defamation

58.     Plaintiff  repeats and re-alleges paragraphs 1-23, above, as if fully set forth herein.

59.     Defendants' Defamatory Broadcast No. 3 maliciously, intentionally, knowingly or recklessly falsely published a false statement that Plaintiff was the source of the claim  that "President Donald Trump's critique of the media encouraged Saudi Arabia's killing of journalist Jamal Khashoggi."

60.     Defendants' false and defamatory statement that Plaintiff was the source of the claim  that "President Donald Trump's critique of the media encouraged Saudi Arabia's killing of journalist Jamal Khashoggi" was published with ill-will and spite towards Plaintiff.

61.     Defendants' false and defamatory statement that Plaintiff was the source of the claim  that "President Donald Trump's critique of the media encouraged Saudi Arabia's killing of journalist Jamal Khashoggi" was published without privilege to their audience, e.g., a third party.

62.     Defendants' false and defamatory statement that Plaintiff was the source of the claim  that "President Donald Trump's critique of the media encouraged Saudi Arabia's killing of journalist Jamal Khashoggi" is actionable as a matter of law irrespective of special harm or its publication caused Plaintiff special harm.

63.     Defendants' false and defamatory statement that Plaintiff was the source of the claim  that "President Donald Trump's critique of the media encouraged Saudi Arabia's killing of journalist Jamal Khashoggi" damaged Plaintiff in his business, profession,  and personally as a human rights advocate or otherwise.

64.     As a direct and proximate result of the false and defamatory statements concerning Plaintiff published or caused to be published by Defendants, Mr. Saffuri has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, a human rights  and international justice advocate, and as a businessman, and has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

65.     Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false and defamatory storyline and speciously false statements that Plaintiff was the source of the claim  that "President Donald Trump's critique of the media encouraged Saudi Arabia's killing of journalist Jamal Khashoggi"  with the specific intent to cause harm to Mr. Saffuri and in order to boost their own reputations and that of the Kingdom of Saudi Arabia and to conceal, deny and obfuscate the fact that Saudi Arabia was responsible for Mr. Khashoggi's disappearance, torture and death, as well as boost Defendants' ratings, popularity and viewership, , and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

### COUNT VI - Defamation

66.     Plaintiff  repeats and re-alleges paragraphs 1-23, above, as if fully set forth herein.

67.     Defendants' Defamatory Broadcast No. 3 maliciously, intentionally, knowingly, or recklessly falsely published a false statement that Plaintiff "Khaled Saffuri has strong ties with extremist organizations and with Al-Qaeda supporter Abdelrahman al-Amoudi who is currently in American custody and is also implicated in the plot to kill the late King Abdullah bin Abdelaziz when the later was a Crown Prince" of the Kingdom of Saudi Arabia.

68.     Defendants' false and defamatory *per se* statement that Plaintiff "Khaled Saffuri has strong ties with extremist organizations and with Al-Qaeda supporter Abdelrahman al-Amoudi who is currently in American custody and is also implicated in the plot to kill the late King Abdullah bin Abdelaziz when the later was a Crown Prince" was published with ill-will and spite towards Plaintiff.

69.     Defendants' false and defamatory statement that Plaintiff "Khaled Saffuri has strong ties with extremist organizations and with Al-Qaeda supporter Abdelrahman al-Amoudi who is currently in American custody and is also implicated in the plot to kill the late King Abdullah bin Abdelaziz when the later was a Crown Prince" was published without privilege to their audience, e.g., a third party.

70.     Defendants' false and defamatory statement that Plaintiff "Khaled Saffuri has strong ties with extremist organizations and with Al-Qaeda supporter Abdelrahman al-Amoudi who is currently in American custody and is also implicated in the plot to kill the late King Abdullah bin Abdelaziz when the later was a Crown Prince" is actionable as a matter of law irrespective of special harm or whether its publication caused Plaintiff special harm.

71.     Defendants' false and defamatory statement that "in 2001, his [Plaintiff's] relations with Hamas, grew stronger and he  began receiving financial funds counting in the  tens of millions of dollars to support the Muslim Brotherhood in the U.S. and to "buy" media voices and writers to influence American society [and] to depict Saudi Arabia as a state sponsor of terrorism and a dictatorship" is defamatory *per se.*

72.     Defendants' false and defamatory statement that Plaintiff was the source of the claim  that "President Donald Trumps' critique of the media encouraged Saudi Arabia's killing of journalist

Jamal Khashoggi" damaged Plaintiff in his business, profession,  and personally as a human rights advocate or otherwise.

73.     As a direct and proximate result of the false and defamatory statements concerning Plaintiff published or caused to be published by Defendants, Mr. Saffuri has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, a human rights  and international justice advocate, and as a businessman, and has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

74.     Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false and defamatory storyline and speciously false statements that Plaintiff was the source of the claim  that "President Donald Trumps' critique of the media encouraged Saudi Arabia's killing of journalist Jamal Khashoggi"  with the specific intent to cause harm to Mr. Saffuri and in order to boost their own reputations and that of the Kingdom of Saudi Arabia and to conceal, deny and obfuscate the fact that Saudi Arabia was responsible for Mr. Khashoggi's disappearance, torture and death, as well as boost Defendants' ratings, popularity and viewership, , and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

## COUNT VII - Defamation

75.     Plaintiff  repeats and re-alleges paragraphs 1-23, above, as if fully set forth herein.

76.     Defendants' Defamatory Broadcast No. 3 maliciously, intentionally, knowingly, and recklessly made a false statement that Plaintiff was "the only source feeding news reports on the Khashoggi's case" and that Saffuri was "linked to the plot to kill late King Abdullah bin

Abdelaziz", then the ruler of the House of Saud and the King of the Kingdom of Saudi Arabia, the owners of Al Arabiya.

77.     Defendants' false and defamatory statement that Plaintiff was "the only source feeding news reports on the Khashoggi's case" and that Saffuri was "linked to the plot to kill late King Abdullah bin Abdelaziz" was published with ill-will and spite towards Plaintiff.

78.     Defendants' false and defamatory statement that Plaintiff was "the only source feeding news reports on the Khashoggi's case" and that Saffuri was "linked to the plot to kill late King Abdullah bin Abdelaziz" was published without privilege to their audience, e.g., a third party.

79.     Defendants' false and defamatory statement that Plaintiff was "the only source feeding news reports on the Khashoggi's case" and that Saffuri was "linked to the plot to kill late King Abdullah bin Abdelaziz" is actionable as a matter of law irrespective of special harm or its publication caused Plaintiff special harm.

80.     Defendants' false and defamatory statement that Plaintiff Saffuri was "linked to the plot to kill late King Abdullah bin Abdelaziz" is defamatory *per se*.

81.     Defendants' false and defamatory statement that Plaintiff was "the only source feeding news reports on the Khashoggi's case" and that Saffuri was "linked to the plot to kill late King Abdullah bin Abdelaziz" damaged Plaintiff in his business, profession, and personally as a human rights advocate or otherwise.

82.     As a direct and proximate result of the false and defamatory statements concerning Plaintiff published or caused to be published by Defendants, Mr. Saffuri has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, a human rights and international justice advocate, and as a businessman, and has lost or will lose business

opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

83.     Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false and defamatory statement that Plaintiff was "the only source feeding news reports on the Khashoggi's case" and that Saffuri was "linked to the plot to kill late King Abdullah bin Abdelaziz" with the specific intent to cause harm to Mr. Saffuri and in order to boost their own reputations and that of the Kingdom of Saudi Arabia and to conceal, deny and obfuscate the fact that Saudi Arabia was responsible for Mr. Khashoggi's disappearance, torture and death, as well as boost Al Arabiya's ratings, popularity and viewership, , and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

## Count VIII – False Lights

84.     Plaintiff  repeats and re-alleges paragraphs 1-83, above, as if fully set forth herein.

85.     Defendants' Broadcasts 1 through 3, as set forth above, were maliciously, intentionally, knowingly, or recklessly publicized and thereby exposed Plaintiff Khaled Saffuri to unwanted publicity.

86.     Defendants published or caused to be published by broadcast and electronic transmission and otherwise untrue statements concerning Mr. Saffuri on Defendants' television stations and websites, as well as on YouTube and other websites.

87.     Defendants Broadcasts 1 through 3, as set forth above, were maliciously, intentionally, knowingly, or recklessly false statements, representations or imputations that were publicized and exposed Plaintiff Khaled Saffuri to unwanted publicity.

88.     Defendants published or caused to be published such false statements concerning

Mr. Saffuri knowing that such statements would be disseminated throughout the world, and

indeed, have taken ongoing steps to promote and disseminate these false statements.

89.     The false statements published or caused to be published by Defendants state outright and

also carry the unmistakable message that Mr. Saffuri has, *inter alia*,  spread falsehoods and fake

news relating to Jamal Khashoggi; has received illegal financial contributions and support from

terrorist organizations, such as Hamas and Al Qaeda, and is himself a terrorist and has participated

in a plot to assassinate a head of state in violation of the laws of the United States of America and

international law. Such untrue statements place Mr. Saffuri in a false light highly offensive to a

reasonable person, such that anyone who receives the false statements of fact published or caused

to be published by Defendants concerning Mr. Saffuri understands the untrue statements to indict

or imply that Mr. Saffuri is a terrorist and international pariah, and an enemy of mankind who is

supporting and participating in terroristic activities that are universally condemned.

90.     Defendants published or caused to be published the false statements concerning Mr.

Saffuri, as set forth hereinabove, without privilege and with knowledge that they were false and/or

with reckless disregard for the truth or falsity of the statements.

91.     Defendants' false statements concerning Mr. Saffuri, as set forth hereinabove, causes

severe emotional distress, mental and physical harm and also damaged Plaintiff in his business,

profession, and as a human rights advocate or otherwise.

92.     As a direct and proximate result of the false statements concerning Plaintiff published or

caused to be published by Defendants, Mr. Saffuri has suffered personal humiliation and mental

anguish, permanent damage to his reputation as a person, a human rights  and international justice

advocate, and as a businessman, and has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

93.     Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false narrative and storyline and the speciously false statements set forth hereinabove with the specific intent to cause harm to Mr. Saffuri and in order to boost their own reputations and that of the Kingdom of Saudi Arabia and to conceal, deny and obfuscate the fact that Saudi Arabia was responsible for Mr. Khashoggi's disappearance, torture and death, as well as boost Defendants' ratings, popularity and viewership, and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Khaled Saffuri demands judgment against Defendants Al Arabiya, Al Arabiya Al Hadath, Saudi 24 TV and Othman Omar, jointly and severally, as follows:

a)      For general damages in an amount to be determined at trial in an amount not less than THREE MILLION DOLLARS ($3,000,000.00), or such other amount to be proved at trial;

b)      For special damages in an amount to be determined at trial in an amount not less than ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00), or such other amount to be proved at trial;

c)      For punitive damages in an amount to be proven at trial, but not less than ten times the amount of general and special damages combined, to punish and penalize Defendants and deter Defendants from repeating their unlawful conduct;

d)      For an injunction requiring Defendants to remove all statements adjudicated defamatory in this case from any and all websites, including but not limited to Defendants' broadcasts, its websites and social media platforms, the Kingdom of Saudi Arabia's website and social media platforms, and YouTube.

e)      For an injunction requiring Defendants broadcast or publish a retraction of all false and defamatory statements about Plaintiff  and to publish said retraction in the Washington Post or a similar newspaper with nationwide distribution;

f)      For attorneys' costs and fees incurred by Plaintiff in this action; and

g)      For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff KHALED SAFFURI demands a trial by jury of all issues so triable in this cause pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Respectfully submitted this 7th day of October 2019.

                                         *s/ Bruce Fein*
                                         Bruce Fein (D.C. Bar No: 446615)
                                         W. Bruce DelValle (D.C. Bar No: 1520906)
                                         FEIN & DELVALLE PLLC
                                         300 New Jersey Avenue NW, Ste 900
                                         Washington, DC  20001
                                         Telephone: (202) 465-8729
                                         *bruce@feinpoints.com*
                                         *brucedelvalle@gmail.com*

                                         **Attorneys for Plaintiff Khaled Saffuri.**